IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| NORBERTO TORRES, R74153, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | ) No. 19-248-SPM |
| | ) |
| KENT BROOKMAN and JAOSN HART, | ) |
| | ) |
| Defendants. | ) |

**<u>DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF SUMMARY JUDGMENT</u>**

Now Come the Defendants, KENT BROOKMAN and JASON HART, by and through their attorney, KWAME RAOUL, Attorney General of the State of Illinois, and for their Memorandum of Law in Support of their Motion for Summary Judgment, state as follows:

**<u>INTRODUCTION</u>**

Plaintiff, Norberto Torres (#R74153) is an inmate of the Illinois Department of Corrections and is currently housed at Pinckneyville Correctional Center ("Pinckneyville"). (Court Doc. 39). During the time of the incidents alleged in the Complaint, Plaintiff was housed at Menard Correctional Center ("Menard"). (Court Doc. 1). On February 28, 2019, Plaintiff filed a Complaint alleging his Eighth and Fourteenth Amendment Constitutional rights were violated while housed at Menard. Specifically Plaintiff claims that on March 9, 2017, he was issued a disciplinary ticket after authorities at Pontiac Correctional Center found a handwritten "Latin Folk" questionnaire containing Plaintiff's name and information and matching his handwriting. (Court Doc. 1, pg. 11). Plaintiff, who was then housed at Menard, alleges he was then issued an IDR for participating in Security Threat Group ( STG") organizational activity. (*Id.,* pg. 6, 11-12). Despite the 365 Ticket being expunged, Plaintiff asserts he was served a new IDR alleging the exact same offense two days later. (*Id.,* pg. 6, 14). Plaintiff alleges Defendants Brookman and Hart again sat on the

Adjustment Committee for the new IDR. (*Id.*). During the second hearing Plaintiff states he was found guilty and was sentenced to three months in segregation. (*Id.*).

In the Court's Memorandum and Order (Court Doc. 28), the Court held that the case would proceed against Defendants Brookman and Hart on the following count:

**Count 1:** Fourteenth Amendment procedural due process claim against Brookman and Hart for convicting Plaintiff on the same disciplinary charge which they had previously expunged and for failing to provide him with adequate opportunity to prepare by not producing the alleged document which was the basis of the charges.

Defendants move for summary judgment because Defendants Brookman and Hart did not violate Plaintiff Fourteenth Amendment rights and did not deny Plaintiff due process. Additionally because Plaintiff cannot show Defendants violated a clearly established constitutional right, they are entitled to be free from suit under the affirmative defense of qualified immunity. Defendants request the Court grant their motion for summary judgment.

## UNDISPUTED MATERIAL FACTS[1]

1. During the time relevant to the Complaint, Norberto Torres R74153 was an inmate incarcerated within the Illinois Department of Corrections (IDOC) at Menard Correctional Center ("Menard"). (Exhibit A, Deposition of Plaintiff Norberto Torres).

2. At all relevant times, Kent Brookman was employed by IDOC as an Adjustment Committee Chairman at Menard. (Exhibit B, Defendant Kent Brookman Responses to Plaintiff's First Set of Interrogatories).

---

[1] Defendants admit these facts are undisputed and material for the sole purposes of this Motion for Summary Judgment only. Defendants reserve the right to dispute these facts or argue any of these facts are immaterial at a later stage of the proceedings in this matter.

3.   At all relevant times, Jason Hart was employed by IDOC as an Adjustment Committee Chairman at Menard. (Exhibit C, Defendant Jason Hart Responses to Plaintiff's First Set of Interrogatories).

4.   Plaintiff currently resides at Pinckneyville Correctional Center ("Pinckneyville"). (Exhibit A, pg. 13).

5.   On March 13, 2017, Plaintiff was issued a disciplinary ticket 201700365/1-MEN for the offense of 205 Gang or Unauthorized (UA) Organizational Activity. (Exhibit D, Plaintiff's Disciplinary Tickets and Adjustment Committee Final Summary Reports, *see* bates 000224).

6.   Plaintiff refused to sign the ticket that was served to him on March 13, 2017. (*Id.*)

7.   The disciplinary ticket indicated Pontiac Intel Unit received an envelope filled with STG (security threat group) material discovered while shaking down property from an individual who had just arrived from Menard. (*Id.*). In this envelope was a hand written Latin Folk questionnaire written by Plaintiff. (*Id.*).

8.   The Adjustment Committee at Menard held a disciplinary hearing on March 15, 2017 at approximately 11:03 a.m. The Adjustment Committee Chairpersons were Defendants Kent Brookman and Jason Hart. (Exhibit D, *see* Bates stamped 000223, Exhibit B, *see* pg. 2 No. 2; Exhibit C, *see* pg. 2 No. 2 ).

9.   Plaintiff does not recall speaking to Defendant Hart directly during the Adjustment Committee Hearing on March 15, 2017. (Exhibit A, pg. 41-42).

10.   Plaintiff states Defendant Brookman went through the charge with him and expunged the ticket. (Exhibit A, pg. 42).

11.   Ticket 201700365/1-MEN was expunged. (Exhibit D, *see* Bates stamped 000223).

12.     On March 17, 2017 at approximately 6:30 p.m., records indicate Plaintiff was issued disciplinary ticket 201700409/1-MEN for the offense of 205 Gang or Unauthorized (UA) Organizational Activity. (Exhibit D, *see* bates 000226).

13.     Plaintiff refused to sign the disciplinary ticket served to him on March 17, 2017. (*Id.*).

14.     On March 22, 2017, the Adjustment Committee held a disciplinary hearing for disciplinary ticket 201700409/1-MEN. The Adjustment Committee Chairpersons were Defendants Kent Brookman and Jason Hart. (Exhibit D, *see* bates stamped 000225, Exhibit B, *see* pg. 2 No. 2; Exhibit C, *see* pg. 2, No. 2).

15.     As a result of the disciplinary hearing held on March 22, 2017, the following disciplinary action was recommended: three months of C grade, three months of segregation, three months of commissary restrictions, and six months of contact visit restriction (Exhibit D, *see* bates stamped 000225).

16.     Defendants Brookman and Hart provide that as a member of the Adjustment Committee Hearing on March 15, 2017 and March 22, 2017, [they] only made a recommendation regarding imposing disciplinary action on the incarcerated person who was found guilty of a disciplinary ticket. It was [their] recommendation that Plaintiff be found guilty of the disciplinary ticket. Defendants further provide that the Chief Administrative Officer, the warden, makes the final determination regarding the incarcerated person being found guilty of a disciplinary ticket as well as what disciplinary action that incarcerated person receives. (Exhibit B, *see* pg. 6, No. 14; Exhibit C, *see* pg. 6, No. 14).

17.     Defendants Brookman and Hart provide they do not recall whether or not Plaintiff made a request to call witnesses on Plaintiff's behalf at the Adjustment Committee Hearings held on March 15, 2017 and March 22, 2017. Defendants further provides that the incarcerated person

indicates on the disciplinary ticket who they want as a witness. If there is no witness request made on the disciplinary ticket, the Adjustment Committee has the discretion to decide whether to accept a late witness at an Adjustment Committee Hearing. (Exhibit B, *see* pg. 2-3 No. 4; Exhibit C, *see* pg. 2, No. 4).

18. Plaintiff did not request any witnesses regarding either disciplinary ticket 201700365/1-MEN or 201700409/1-MEN. (Exhibit D, *see* bates stamped 000224, 000226).

19. Defendants Brookman and Hart have made a reasonable inquiry and based on the information from the institution they do not recall whether or not they [personally] reviewed the questionnaire, which is the basis on the disciplinary ticket 201700365/1- MEN and 201700409/2-MEN. Defendants further provide, that any evidence would have been reviewed in the Intelligence Unit prior to the Adjustment Committee Hearing and would have been included in the Basis for Decision section of the Adjustment Committee Final Summary Report. (Exhibit B, *see* pg. 6 No. 13; Exhibit C, *see* pg. 5 No. 13).

20. The Adjustment Committee Final Summary Report for ticket 201700409/2-MEN and dated March 22, 2017 indicates writing samples were obtained from Plaintiff's master file by the Intel Unit and numerous similarities were noted which that determined Plaintiff authored the questionnaire. (Exhibit D, *see* bates 000225).

21. The Final Summary Report further indicates Plaintiff is a self-admitted member of the Security Threat Group Maniac Latin Disciples which falls under the umbrella of Latin Folk. (*Id.*).

22. Plaintiff is not aware of what steps Defendants took in investigating disciplinary ticket 201700409/1-MEN. (Exhibit A, pg. 56-57).

23. Plaintiff admits he was provided with a copy of each of the disciplinary tickets as well as the adjustment committee final summary reports. (Exhibit A, pg. 59).

24. On May 24, 2017, Plaintiff submitted a grievance no. 18-6-17 to the facility level regarding the disciplinary report and ticket he received dated March 9, 2017. (Exhibit E, Plaintiff's Grievance *see* bates 000020- 000022).

25. Plaintiff sought to be released from segregation, the ticket be expunged, his monthly payroll be [restored], and that he not be retaliated against for filing the grievance. (Exhibit E, *see* bates 000020).

26. Plaintiff states while in segregation his toilet was polluted with insects and had mildew, he further states that it took three or four days before he received his bed and some of his papers regarding his pending case were lost. (Exhibit A, pg. 58).

27. On June 6, 2017, grievance 18-6-17 was received by the Grievance Office. (*Id.*).

28. On June 8, 2017, the grievance was responded to by Grievance Officer Kelly Pierce. (Exhibit E, *see* bates 000018-000019).

29. Although the offender was guilty of the infractions, the Grievance Office recommended Plaintiff's grievance be affirmed and that ticket #201700409/1-MEN be expunged in accordance with DR 504. (*Id.*).

30. On June 15, 2017, The Chief Administrative Office received this grievance and on June 20, 2017 concurred with decision of the Grievance Office.(*Id.*).

31. Plaintiff did not appeal this decision to the director. (*Id.*).

32. Plaintiff states that other than the Adjustment Committee Hearings he had no interaction with Defendants Brookman and Hart and did not speak with them regarding the disciplinary ticket. (Exhibit A, pg. 51-52).

33. Plaintiff is unaware of what due process means. (Exhibit A, pg. 50).

## ARGUMENT

I.   **Defendants Kent Brookman and Jason Hart are entitled to summary judgment on Plaintiff's Fourteenth Amendment due process claim.**

Plaintiff alleges Defendants Brookman and Hart deprived him of a liberty interest for convicting Plaintiff on the same disciplinary charge which they had previously expunged and for failing to provide him with adequate opportunity to prepare by not producing the alleged document which was the basis of the charges. In the context of a prison disciplinary hearing, due process requires that the prisoner receive written notice of the claimed violation at least 24 hours before the hearing. Due process also requires an opportunity to call witnesses and present documentary evidence (when consistent with institutional safety) to an impartial decision-maker. Additionally due process requires a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action. "Some evidence" to satisfy due process must support a disciplinary decision. *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007); *Wolff v. McDonnell*, 418 U.S. 539 (1974).

Here there is no evidence that Defendants deprived Plaintiff of a liberty interest as it relates to ticket 201700365/1-MEN or 201700409/1-MEN. On March 13, 2017, Plaintiff was issued disciplinary ticket 201700365/1-MEN for the offense of 205 Gang or Unauthorized (UA) Organizational Activity. (Exhibit D, Plaintiff's Disciplinary Tickets and Adjustment Committee Final Summary Reports, see bates 000224). This disciplinary ticket indicated the Pontiac Intel Unit had received an envelope filled with material discovered while shaking down property from an individual who had just arrived from Menard. (*Id.*). In this envelope was a hand written Latin Folk questionnaire written by Plaintiff. (*Id.*). The Menard Adjustment Committee, which was comprised of Defendants Brookman and Hart held a disciplinary hearing on March 15, 2017. (Exhibit D, see

Page 7

**Torres v. Brookman, et al. 19-248-SPM**

Bates stamped 000223, Exhibit B, see pg. 2 No. 2; Exhibit C, see pg. 2 No. 2). As a result of that hearing Ticket 201700365/1-MEN was expunged. (Exhibit D, see Bates stamped 000223). There was no violation of due process here as Plaintiff was served with the ticket, made no request for witnesses and was provided with the Adjustment Committee's final summary report. (Exhibit A, pg. 59; Exhibit D, see bates 000224, 000226).

On March 17, 2017, Plaintiff was served with a disciplinary ticket for the offense of 205 Gang or Unauthorized (UA) Organizational Activity. (Exhibit D, *see* bates 000226). Though the same charge as the ticket served on Plaintiff on March 13, 2017, this ticket included additional information that the Menard Intelligence Unit had obtained hand-writing samples from Plaintiff's master file and numerous similarities were noted that determined Plaintiff authored the questionnaire. (*Id*.). The ticket further indicated Plaintiff is a self-admitted member of the Security Threat Group Maniac Latin Disciples which falls under the umbrella of Latin Folk. (*Id.*). On March 22, 2017, the Adjustment Committee, again comprised of Defendants Brookman and Hart, held a disciplinary hearing for disciplinary ticket 201700409/1-MEN. (Exhibit D, see bates stamped 000225, Exhibit B, see pg. 2 No. 2; Exhibit C, see pg. 2, No. 2). As a result of the disciplinary hearing, the following disciplinary action was recommended: three months of C grade, three months of segregation, three months of commissary restrictions, and six months of contact visit restriction (Exhibit D, see bates stamped 000225). After this recommendation, the final determination regarding Plaintiff's guilt as well as disciplinary action was made by the Chief Administrative Officer. (Exhibit D, *see* bates stamped 000225). Plaintiff again did not request witnesses when served this ticket and refused to sign for the ticket. (Exhibit D, *see* bates000226). Additionally, he did not request to present any documents, admits he was provided with a copy of the disciplinary ticket, and is unaware of what steps Defendants took in investigating disciplinary

**Page 8**

**Torres v. Brookman, et al. 19-248-SPM**

ticket 201700409/1-MEN. (Exhibit A, pg. 56-57). Still further the disciplinary ticket adequately advised Plaintiff of charges against him.

There is no evidence that Plaintiff was denied due process by being found guilty of disciplinary ticket 201700409/1-MEN. Moreover, Plaintiff incorrectly correlates a violation of his due process with being able to review the documents which were the basis of the charges. First, confrontation and cross-examination of witnesses and evidence are not absolutely required rights in a prison disciplinary proceeding, but are matters left to the sound discretion of the prison officials. Further, Defendants did not interfere with Plaintiff's liberty interest. Inmates do have liberty interests in being free from disciplinary segregation in certain circumstances. *See Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697–98 (7th Cir. 2009). The discipline Plaintiff received as a result of the STG ticket was ultimately expunged by the Grievance Office which the Chief Administrative Office also concurred. (Exhibit E, *see* bates 000018-000019).

Under certain limited circumstances, inmates punished with segregation may be able to pursue a claim for deprivation of a liberty interest without due process of law. *Marion*, 559 F.3d at 697–98. This due process liberty interest arises when the conditions of disciplinary confinement impose an atypical and significant hardship on the inmate, when compared to the ordinary incidents of prison life. *Sandin v. Conner*, 515 U.S. 472, 484 (1995). The Seventh Circuit utilizes a two-prong analysis for determining whether disciplinary segregation imposes an atypical and significant hardship; the Court must consider the: (1) combined import of the duration of the segregated confinement; and (2) conditions endured by the prisoner during that period. *Marion*, 559 F.3d at 697–98.

Even assuming Plaintiff's three months in disciplinary segregation compared to his life sentence satisfies the *Marion* duration prong, Plaintiff fails to allege sufficient conditions to satisfy

the second prong. Plaintiff states while in segregation his toilet was polluted with insects and had mildew, he further states that it took three or four days before he received his bed and some of his papers regarding his pending case were lost. (Exhibit A, pg. 58).  However he alleges no facts to support these allegations.  *See Cunningham v. Snyder*, 472 F.Supgs.2d 1023, 1029 (S.D. Ill. 2006) ("[I]t would be difficult ... to make disciplinary segregation sufficiently more restrictive than the conditions of the general population of ... a [maximum-security] prison to count as an atypical and significant deprivation of liberty-that is, to count as a substantial incremental deprivation-without scraping up against the Eighth Amendment's prohibition against cruel and unusual punishments.") (citing *Wagner v. Hanks*, 128 F.3d 1173, 1174 (7th Cir. 1997)); *Kervin v. Barnes*, 787 F.3d 833, 837 (7th Cir. 2015) (noting that dismissal was proper when plaintiff did not allege that he suffered any psychological or physical injury from disciplinary segregation). Plaintiff has failed to show that Defendants him of a liberty interest regarding the disciplinary tickets 201700365/1-MEN and 201700409/1-MEN. Plaintiff has also failed to show that Defendants interfered with Plaintiff's liberty interest and therefore Defendants are entitled to summary judgment on this count.

**II.  Defendants are entitled to qualified immunity.**

Government officials performing discretionary functions generally are shielded from liability for civil damages if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 817, 818 (1982). To determine whether an official is entitled to qualified immunity, a two part inquiry is required: (1) whether a constitutional right would have been violated on the facts alleged, and (2) whether the right alleged to have been violated was clearly established. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable official that his conduct was

Page 10

**Torres v. Brookman, et al. 19-248-SPM**

unlawful in the situation he confronted. *Id.* at 202. An official who makes a reasonable mistake as to what the law requires is entitled to the defense of qualified immunity. *Id.* at 205.

Under the first prong of the analysis, the facts alleged here do not give rise to a constitutional violation. As analyzed in the preceding sections, Defendants Brookman and Hart took appropriate steps in issuing plaintiff a disciplinary ticket, and in serving on the adjustment committee and finding Plaintiff guilty.

Under the second prong of the analysis, Defendants are also entitled to qualified immunity because if they were to be held liable on the facts alleged, it would constitute a heightened standard for what constitutes a due process violation.   Here, on Plaintiff's facts, these defendants did not harm Plaintiff.  These defendants followed procedure in issuing Plaintiff a ticket. Further Plaintiff attended the adjustment committee hearings, filed a grievance to appeal the ruling, and received a decision remanding and ultimately expunging the ticket and removing it from his disciplinary record in its entirety. To require more from these Defendants would constitute a heightened standard under the constitution. Defendants are, therefore, entitled to qualified immunity.

==Look up cases in argument for case law to include here.==

## CONCLUSION

Defendants are entitled to summary judgment. Plaintiff has failed to prove necessary elements of his claims. In particular, Plaintiff has failed to show Defendants Brookman and Hart violated Plaintiff Fourteenth Amendment rights and denied Plaintiff due process. Additionally, Plaintiff's claims are barred by qualified immunity.

WHEREFORE, for the above and foregoing reasons, Defendants Brookman and Hart respectfully request that this Honorable Court grant their Motion and enter Summary Judgment in their favor and against the Plaintiff.

Respectfully submitted,

KENT BROOKMAN, and JASON HART,

    Defendants,

KWAME RAOUL, Attorney General,
State of Illinois,

    Attorney for Defendants,


By:   s/ *Areda Johnson*
      Areda Johnson, #6316978
      Assistant Attorney General
      201 West Pointe Dr., Suite 7
      Belleville, IL  62226
      Telephone: (618) 236-8781
      Facsimile: (618) 236-8620
      E-Mail: areda.johnson@ilag.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| NORBERTO TORRES, R74153, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | ) No. 19-248-SPM |
| | ) |
| KENT BROOKMAN and JAOSN HART, | ) |
| | ) |
| Defendants. | ) |

## CERTIFICATE OF SERVICE

I hereby certify that on November 17, 2021, the foregoing document, <u>Defendants' Memorandum of Law in Support of Summary Judgment</u> was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

None

and I hereby certify that on the same date, I caused a copy of same to be mailed by United States Postal Service, in an envelope fully prepaid and properly addressed, to the following participant:

Norberto Torres, R74153
PINCKNEYVILLE CORRECTIONAL CENTER
5835 State Route 154
Po Box 999
Pinckneyville, IL 62274

By:   s/ *Areda Johnson*
      Areda Johnson, #6316978
      Assistant Attorney General
      201 West Pointe Dr., Suite 7
      Belleville, IL 62226
      Telephone: (618) 236-8781
      Facsimile: (618) 236-8620
      E-Mail: areda.johnson@ilag.gov