IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| NORBERTO TORRES, <br> #R74153, <br><br> Plaintiff, <br><br> vs. <br><br> KENT E. BROOKMAN, and <br> JASON N. HART, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 19-cv-00248-SPM <br> ) <br> ) <br> ) <br> ) <br> ) |

## MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

Now before the Court is Defendants' Motion for Summary Judgment (Doc. 40). Plaintiff Norberto Torres filed a response in opposition (Doc. 46). As explained below, the motion will be granted.

### BACKGROUND

In this *pro se* civil rights lawsuit, Plaintiff claims that Defendants violated his constitutional right to due process when they found him guilty of a disciplinary infraction that had previously been expunged, which resulted in his confinement in punitive segregation for three months at Menard Correctional Center ("Menard"). The second Inmate Disciplinary Report ("IDR") was also ultimately expunged, but not before Plaintiff completed serving his segregation time. Plaintiff is currently confined at Pinckneyville Correctional Center ("Pinckneyville"). (Doc. 39).

Upon initial review of the Complaint, the Court permitted Plaintiff to proceed on two counts (Doc. 9). Subsequently, Count 2 (an Eighth Amendment claim for unsanitary cell

1

conditions) and one Defendant were dismissed from the action for Plaintiff's failure to exhaust his administrative remedies. (Doc. 20). The case now consists of a single count:

> **Count 1:** Fourteenth Amendment procedural due process claim against Brookman and Hart for convicting Plaintiff on the same disciplinary charge which they had previously expunged and for failing to provide him with adequate opportunity to prepare by not producing the alleged document which was the basis of the charges.

(Doc. 9, p. 3).

## RELEVANT FACTS

On March 9, 2017, Plaintiff was incarcerated at Menard, and was issued IDR Number 201700365/1-MEN (the "365 Ticket") for the offense of 205/Security Threat Group ("STG") organizational activity. (Doc. 41-4, pp. 1-2). The ticket was based on a handwritten "Latin Folk" questionnaire containing Plaintiff's name and information and allegedly matching his handwriting. The document had been found by Pontiac Correctional Center officials among the belongings of another inmate who had just transferred from Menard to Pontiac. (Doc. 1, p. 11; Doc. 41-4, p. 2). Defendants Brookman and Hart, as the Adjustment Committee, conducted the disciplinary hearing on the 365 Ticket on March 15, 2017, and expunged the charge. (Doc. 1, pp. 6, 13; Doc. 41-4, p. 1).

Two days later, on March 17, 2017, Plaintiff was issued IDR Number 2017-00409/1-MEN, (the "409 Ticket") for the same 205 offense based on the same gang-related document. (Doc. 41-4, pp. 3-5). This ticket included the additional information that handwriting samples from Plaintiff's master file were compared to the questionnaire to conclude that Plaintiff wrote it, and stated that Plaintiff was a self-admitted member of a gang affiliated with the Latin Folk. (Doc. 41-4, p. 5). On March 22, 2017, Brookman and Hart again served as the Adjustment Committee for the hearing on this ticket. Plaintiff asserted he did not write the questionnaire, but they found

Plaintiff guilty, punishing him with 3 months in segregation as well as loss of privileges. (Doc. 1, pp. 6, 14; Doc. 41-4, p. 3). Defendants note that they merely recommended the punishment, and the warden made the final determination of guilt and sanctions. (Doc. 41, p. 4).

Plaintiff maintains that he requested a witness prior to the hearing on the 365 Ticket via institutional mail, but Defendants did not contact the witness. (Doc. 46, pp. 8, 15). During the hearing on the 409 Ticket, Plaintiff requested a hearing investigator to interview that witness and to investigate the validity of the handwritten questionnaire, but Defendants declined to do so. (Doc. 46, p. 8). Defendants state they have no recollection of whether Plaintiff requested a witness at either hearing, but note Plaintiff did not request a witness on either disciplinary ticket. (Doc. 41, pp. 4-5).

Plaintiff filed a grievance challenging the discipline imposed as a result of the 409 Ticket. (Doc. 1, pp. 21-23; Doc. 41-5, pp. 5-7). He asserted that he had never been informed of any investigation, was not provided with a hearing investigator, was denied the ability to call witnesses to be interviewed, and could not prepare a defense because he was never given a copy of the document that prompted the IDR or the documents relied upon to conclude that the handwriting on the "Latin Folk" questionnaire was Plaintiff's. The grievance officer noted that Plaintiff was guilty of the offense, but the ticket was expunged on June 15, 2017 because the hearing was not conducted in accordance with Department Rule 504. (Doc. 1, pp. 25-26; Doc. 41-5, pp. 3-4).

Plaintiff asserts that his segregation cell was unsanitary because the toilet was malfunctioning, causing "smelly mold" to grow on the side of the toilet, and Plaintiff and his cellmate were not given any cleaning supplies. (Doc. 1, p. 7). In his deposition, Plaintiff testified that the toilet was "polluted" with insects, mildew, and rust, and that he was breathing in rust while

3

in the cell. (Doc. 41-1, p. 58). Those conditions were not remedied for the duration of his three month segregation term. (Doc. 1, p. 7).

## LEGAL STANDARDS

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is proper only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see Anderson v. Donahoe*, 699 F.3d 989, 994 (7th Cir. 2012). The moving party has the burden of establishing that no material facts are genuinely disputed. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Cincinnati Life Ins. Co. v. Beyrer*, 722 F. 3d 939, 951 (7th Cir. 2013). Any doubt about the existence of a genuine issue must be resolved in favor of the nonmoving party. *Lawrence v. Kenosha Cnty.*, 391 F.3d 837, 841 (7th Cir. 2004).

When presented with a motion for summary judgment, the Court does not decide the truth of the matters presented, and it cannot "choose between competing inferences or balance the relative weight of conflicting evidence." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hansen v. Fincantieri Marine Grp., LLC*, 763 F.3d 832, 836 (7th Cir. 2014) (citations omitted). Once a properly supported motion for summary judgment is filed, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson*, 477 U.S. at 250. The Court must then "view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party." *Hansen*, 763 F.3d at 836. A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017).

**B. Due Process Standard**

"The Due Process Clause of the Fourteenth Amendment applies only to deprivations of life, liberty, and property." *Isby v. Brown*, 856 F.3d 508, 524 (7th Cir. 2017); *Marion v. Radtke*, 641 F.3d 874, 875 (7th Cir. 2011). Procedural due process protections for prison disciplinary proceedings require that the inmate receive "advance written notice of the charges, the chance to present testimony and documentary evidence to an impartial decisionmaker, and a written explanation" of the decision. *Lagerstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006) (citations omitted). *See also Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974). In addition, the decision of the adjustment committee must be supported by "some evidence." *Scruggs v. Jordan,* 485 F.3d 934, 941 (7th Cir. 2007). Even a meager amount of supporting evidence is sufficient to satisfy this inquiry. *Id.*

Demotion to C-grade status and loss of commissary and/or visitation privileges do not implicate a liberty interest. *Thomas v. Ramos,* 130 F.3d 754, 762 n.8 (7th Cir. 1997) (collecting cases) (there is no protected liberty interest implicated in demotion to C-grade status or loss of certain privileges); *see also*, *Woody v. Zatecky*, 594 F. App'x 311, 312 (7th Cir. 2015). And an inmate's liberty interest in avoiding segregation is limited. *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013). A protected liberty interest is triggered only when segregation "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). In assessing whether disciplinary segregation amounts to a constitutional violation, the Court must take into consideration "the combined import of the duration of the segregative confinement *and* the conditions endured." *Hardaway*, 734 F.3d at 743; *Marion v. Columbia Corr. Inst.*, 559 F.3d 693 (7th Cir. 2009).

## DISCUSSION

The fact that Plaintiff's 409 ticket was expunged because the disciplinary hearing failed to comply with an IDOC procedural rule does not mean that a constitutional violation occurred. Likewise, having been found guilty of the 409 ticket after the initial 365 ticket was expunged did not, in and of itself, violate Plaintiff's due process rights. *See Meeks v. McBride*, 81 F.3d 717, 721-22 (7th Cir. 1996) ("[A]n acquittal in an earlier prison disciplinary hearing is no bar to a subsequent hearing to consider the very same charge."). Instead, the Court applies the standards outlined in the section above when assessing Plaintiff's civil rights claims. Two issues may implicate procedural due process concerns: Plaintiff's request for a witness and his inability to review the documents relied upon to find him guilty.

Some facts are in dispute regarding the witness request. Plaintiff insists he made a written request for a witness (a fellow inmate) prior to the first disciplinary hearing, and he renewed that request for the second hearing, but Defendants deny that Plaintiff requested witnesses. (Doc. 46, pp. 8-9, 14-15; Doc. 41, p. 5). Defendants also do not recall whether Plaintiff asked for a witness during either hearing. (Doc 41, pp. 4-5). Defendants note that Plaintiff did not write a witness request on either of the disciplinary tickets, and Plaintiff does not deny that point. Construing the disputed facts in Plaintiff's favor at this stage, the Court presumes that Plaintiff could show that he requested a witness but Defendants refused to obtain that person's testimony. No evidence has been put forth by Defendants to indicate that security or institutional concerns prevented them from granting Plaintiff's request to call the witness. *See Wolff*, 418 U.S. at 566 (prisoner has a right to call witnesses in disciplinary proceeding unless doing so would jeopardize institutional safety or correctional goals).

Plaintiff was given advance written notice of the charge against him, but it is undisputed

that during the disciplinary process, Plaintiff did not receive a copy of the gang questionnaire allegedly written by him, and he was never shown the documents that Defendants relied on to conclude that the handwriting on that questionnaire was Plaintiff's. (Doc. 46, pp. 9-12, 14). Material *exculpatory* evidence must be disclosed in prison disciplinary proceedings if timely requested, unless disclosure "would unduly threaten institutional concerns." *Jones v. Cross*, 637 F.3d, 841, 847 (7th Cir. 2011); *see also Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003). However, prison officials are not required to provide irrelevant or inculpatory evidence. *Jones*, 637 F.3d at 848; *Scruggs*, 485 F.3d at 939-40.

Here, the documents in question are not part of the record, so their exculpatory or inculpatory nature cannot be independently assessed. During the pendency of this case, Plaintiff has had the opportunity to conduct discovery. The "documents related to the resolution of" his disciplinary ticket should have been provided to him by Defendants, and Plaintiff could have specifically requested any that were not disclosed. (Doc. 18, p. 2; Doc. 29). Plaintiff has not filed any motion claiming that he was denied access to relevant documents during discovery. Notably, Plaintiff does not assert that the handwritten questionnaire or handwriting samples would have proved him innocent, and he did not include copies of the documents with his response to the motion for summary judgment. (Doc. 46). Instead, Plaintiff relies on the arguments that he should have been permitted to see the documents during the disciplinary proceedings since they were part of the charge against him, and that Defendants should have independently investigated the reliability of the documents. (Doc. 46, p. 6). Of course, in the opinion of the IDOC reviewing officer who examined the documents, the gang questionnaire and handwriting samples were not exculpatory but instead confirmed Plaintiff's guilt of the charged infraction. Defendants were entitled to rely on the investigator's report, and no legal authority requires them to conduct a

7

separate investigation.

Plaintiff has not set forth any evidence from which the Court could conclude that the withheld documents would have been exculpatory. The record is devoid of facts to support a finding that Plaintiff was denied his procedural due process right to see exculpatory evidence in the disciplinary proceeding. As such, there is no genuine issue of material fact on this issue.

Further, the evidence considered by Defendants in the hearing – the gang questionnaire and the written report of the officer who examined the documents and concluded Plaintiff was the author – satisfies the requirement that "some evidence" exists to support the disciplinary finding. *See Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000) (the "some evidence" standard "is a lenient standard, requiring no more than a modicum of evidence") (internal citations and quotations omitted).

Giving Plaintiff the benefit of the doubt, the evidence now before this Court might support a finding that Defendants' failure to call or interview his witness amounted to a denial of his procedural due process rights. However, that is not the end of the analysis. Even if a procedural violation occurred, Plaintiff's substantive due process rights are only implicated if his term in segregation was of a duration and included conditions that together imposed an "atypical and significant hardship" on him. Notably, the proper comparison is between conditions in punitive segregation as opposed to administrative (non-punitive) segregation. *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997).

Here, Plaintiff is serving a 60-year prison term according to the online records of the IDOC.[1] Courts have dismissed due process claims based on relatively short periods of disciplinary

---

[1] Https://www2.illinois.gov/idoc/Offender/Pages/InmateSearch.aspx (last visited Sept. 14, 2022). Plaintiff also testified to the length of his sentence. (Doc. 41-1, p. 13). Defendants incorrectly stated that Plaintiff is serving a life sentence. (Doc. 41, p. 9).

segregation without inquiry into the specific conditions of confinement. *See Marion*, 559 F.3d at 698; *Townsend v. Fuchs*, 522 F.3d 765, 766 (7th Cir. 2008) (59 days); *Hoskins v. Lenear*, 395 F.3d 372, 374-75 (7th Cir. 2005) (two months); *Thomas v. Ramos*, 130 F.3d 754, 761 (7th Cir. 1997) (70 days in disciplinary segregation was "a relatively short period when one considers [plaintiff's] 12 year prison sentence"). Viewed in the context of Plaintiff's 60-year sentence, a three-month period in punitive segregation is a minuscule part of Plaintiff's imprisonment.

As to the conditions of Plaintiff's segregation confinement, he was initially without a mattress but received it (along with bedding and his personal property and legal papers) within three or four days of being placed in the segregation cell. (Doc. 46, p. 16). The toilet did not work properly, resulting in mold and mildew in the cell, and the cell was infested with insects. *Id.* Plaintiff does not elaborate further on the cell conditions. While these conditions were substandard, Plaintiff does not allege that he suffered physical or mental harm or substantial risk to his health because of his three-month confinement in the cell. More to the point, Plaintiff's allegations do not rise to the level of "evidence that would allow a jury to determine that the conditions in segregation deviated substantially from ordinary conditions of his confinement." *Lisle v. Welborn*, 933 F.3d 705, 721 (7th Cir. 2019) (vague description of rust on cell bars and "corroded feces" in toilet was insufficient to overcome summary judgment on due process claim for four months in segregation). *See also McCoy v. Atherton*, 818 F. App'x 538, 541-42 (7th Cir. 2020) (three months in segregation in a dirty cell near physically and mentally ill inmates did not impose an atypical and significant hardship).

While Plaintiff may have been denied his ability to have witness testimony considered in his disciplinary proceeding, the evidence before the Court regarding his three-month disciplinary confinement in the segregation cell is not sufficient for a reasonable jury to find that Plaintiff was

9

subjected to an atypical and significant hardship amounting to a due process violation. Accordingly, Defendants' motion for summary judgment will be granted. In light of this conclusion, it is not necessary for the Court to address the parties' arguments on qualified immunity.

**DISPOSITION**

**IT IS HEREBY ORDERED** that the Motion for Summary Judgment (Doc. 40) filed by Defendants Brookman and Hart is **GRANTED**. This case is **DISMISSED** in its entirety **with prejudice**.

The Clerk of Court is **DIRECTED** to close this case and enter judgment accordingly.

**IT IS SO ORDERED.**

DATED:  September 15, 2022

*s/ Stephen P. McGlynn*  
**STEPHEN P. McGLYNN**  
**United States District Judge**